**The Commonwealth of MASSACHUSETTS, Plaintiff,**

v.

**MYLAN LABORATORIES, INC., et al., Defendants.**

**Civil Action No. 03–11865–PBS.**

United States District Court, D. Massachusetts.

Oct. 29, 2007.

Richard C. Heidlage, Colleen A. McCarthy, Robert P. Patten, Massachusetts Attorney General's Office, Robert C. Molvar, Boston, MA, Peter A. Mullin, Office of the Attorney General, Boston, MA, for Plaintiffs.

Pamela Zorn Adams, James W. Matthews, Robert J. Muldoon, Jr., Sherin and Lodgen LLP, Peter E. Ball, Amber Anderson Villa, Sally & Fitch LLP, John P. Bueker, Jobe Danganan, Carisa A. Klemeyer, Kirsten V. Mayer, John T. Montgomery, Brien T. O'Connor, Ropes & Gray LLP, Jonathan D. Cohen, Evan Georgopoulos, Gary R. Greenberg, A. John Pappalardo, Louis J. Scerra, Jr., Greenberg Traurig, LLP, Stephen R. Delinsky, Erik J. Frick, Eckert Seamans Cherin & Mellott, LLC, Lee M. Holland, John W. Steinmetz, Robinson & Cole, Martin F. Murphy, Foley Hoag LLP, Michael T. Sullivan, Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP, Boston, MA, Justin S. Antonipillai, Robert S. Litt, Arnold & Porter, Jennifer S. Atkins, Patrick M. Bryan, John K. Crisham, Stacey B. Hall, Jennifer Gardner Levy, Michael C. Occhuizzo, Edwin John U., Karen N. Walker, Kirkland & Ellis LLP, Paul K. Dueffert, Thomas J. Roberts, Williams & Connolly, LLP, Douglas Farquhar, John R. Fleder, Alan M. Kirschenbaum, Hyman, Phelps & McNamara, P.C., Washington, DC, Carol J. Faherty, Sung W. Kim, Jay P. Lefkowitz, Michael J. Maloney, Christopher C. Palermo, Elizabeth A. Quinlan, Kelley Drye & Warren LLP, New York, NY, Jordan M. Heinz, Brian P. Kavanaugh, John W. Reale, Anne Sidrys, Helen Witt, Kirkland & Ellis LLP, Chicago, IL, John P. McDonald, C. Michael Moore, Locke Liddell & Sapp LLP, Dallas, TX, for Defendants.

## MEMORANDUM AND ORDER ON PLAINTIFF COMMONWEALTH OF MASSACHUSETTS'S MOTION TO MODIFY PROTECTIVE ORDER TO PERMIT SHARING OF DISCOVERY MATERIALS WITH OTHER STATE AND FEDERAL LAW ENFORCEMENT PERSONNEL (# 223)

ROBERT B. COLLINGS, United States Magistrate Judge.

### I. Introduction

The plaintiff, the Commonwealth of Massachusetts ("the Commonwealth"), seeks to modify a protective order to which the parties stipulated, and which the district court entered on May 11, 2006. The protective order protects the disclosure of certain proprietary, financial and commercial information of the defendant pharmaceutical companies.[1] In the protective order, the parties also stated that they were "attempting to negotiate a stipulation regarding the right of the Commonwealth to share information covered by this protective order with other law enforcement officers who are not parties to this action." (# 206, Protective Order) The parties have not reached an agreement on this issue. For that reason, on November 21, 2006, the Commonwealth filed its Motion to Modify Protective Order to Permit Sharing of Discovery Materials With Other State and Federal Law Enforcement Personnel (# 223) and an accompanying memorandum (# 222). On December 15, 2006, the defendants filed their Memorandum of Law in

---

1. The defendants remaining in the lawsuit are: Mylan Laboratories, Inc., Ivax Corporation, Warrick Pharmaceuticals Corporation, Watson Pharmaceuticals, Inc., Schein Pharmaceutical, Inc., Teva Pharmaceuticals USA, Inc., Par Pharmaceuticals, Inc., Purepac Pharmaceutical Co., and Roxane Laboratories, Inc. (collectively "the defendants"). Barr Laboratories, Inc., Duramed Pharmaceuticals, Inc., Dey, Inc. and Ethex Corporation have been dismissed from the case.

Opposition to Plaintiff's Motion to Modify Protective Order to Permit Sharing of Discovery Materials with Other State and Federal Law Enforcement Personnel (# 227), and on January 2, 2007, the Commonwealth filed its Reply Memorandum in Support of its Motion to Modify Protective Order to Permit Sharing of Discovery Materials With Other State and Federal Law Enforcement Personnel (# 229). In addition, both the United States and the State of California have filed briefs as amici curiae (# 234 and # 238 respectively). The Court held a hearing on the motion on January 18, 2007. The matter is therefore poised for resolution.

## II. Factual Background

In this action, the Commonwealth alleges, inter alia, that the defendant drug manufacturers caused the Commonwealth to overpay for generic prescription drugs under the Massachusetts Medicaid program by inflating the "Wholesale Acquisition Cost" ("WAC") of covered drugs.[2] (# 222 at 3) The parties stipulated to the protective order at issue here, which protects defendants' "highly sensitive pricing and marketing materials." (# 227 at 2) Under the protective order, any producing party may designate as confidential what it "in good faith, believes to contain (a) proprietary or commercially sensitive information; (b) personal financial information; or (c) information that should otherwise be subject to confidential treatment under Rule 26(c)(7) of the Federal Rules of Civil Procedure." (# 206 ¶ 4) Additionally, the protective order provides that any producing party may designate as "highly confidential" or for "attorney eyes only" what it

> in good faith, believes to contain (a) current and past ... methods, procedures, and processes relating to the pricing of pharmaceuticals; (b) current and past ... marketing plans and methods; (c) current and past ... business planning and financial information; (d) trade secrets; and (e) past or current company personnel or employee information and other "CONFIDENTIAL" information (as defined in paragraph 4) the disclosure of which is

likely to cause competitive or commercial injury to the producing party.
(# 206 ¶ 6)

Pursuant to the protective order, these pieces of "confidential" and "highly confidential" information may be disclosed to particular persons listed in ¶¶ 5(a)-(j) and 7(a)-(j). The persons listed in the current protective order are all involved in the instant litigation, and include, inter alia, the Massachusetts Attorney General ("AG"), any employee in the AG's office, and any Massachusetts official or employee who is assisting the AG in this case. (# 206 ¶¶ 5(a)-(j) and 7(a)-(j)) All recipients of information that falls under the order are required to adhere to its confidentiality provisions.

In the protective order, the parties indicated that they were discussing a possible stipulation regarding whether the Commonwealth could disseminate information covered by the protective order to other state and federal law enforcement officials. Because the parties have been unable to reach an agreement as to this matter (# 222 at 2), the Commonwealth now seeks to modify the protective order to permit the Commonwealth to disseminate information designated "confidential" and "highly confidential" to state and federal law enforcement officers who are responsible for enforcing laws relating to Medicaid, Medicare, "and other federal and state statutes." (# 222 at 2; # 223, Exh. 1 at 3, 5) Specifically, the Commonwealth proposes adding three provisions to the protective order. Two subparagraphs would be added to paragraphs 5 and 7, respectively, and the protective order would then permit disclosure of protected information to:

> 5(k) Law enforcement officers of the states or the United States having responsibility for enforcement of the laws relating to Medicaid, Medicare and other federal and state statutes who have executed a certification in the form attached as Exhibit A.
> 7(k) Law enforcement officers of the states or the United States having responsibility for enforcement of the laws relating to Medicaid, Medicare and other federal and state statutes who have executed a

---

**2.** For a detailed explanation of the specific claims involved in this case, see Massachusetts v.

Mylan Laboratories, 357 F.Supp.2d 314 (D.Mass. 2005).

certification in the form attached as Exhibit A.

(# 223 at 3, 5) In addition, a paragraph 31 would be added which states:

31. Nothing contained in this Order shall prevent or in any way limit or impair the right of the Commonwealth to disclose to any agency or department of the United States, or any division of any such agency or department, or to any agency or department of any state or political subdivision thereof, CONFIDENTIAL information relating to any potential violation of law or regulation, or relating to any matter within that agency's jurisdiction, nor shall anything contained in this Order prevent or in any way limit or impair the use of any such CONFIDENTIAL information by a federal or state agency in any proceeding relating to any potential violation of law or regulation, or relating to any matter within that agency's jurisdiction; provided, however, that the agency shall maintain the confidentiality of CONFIDENTIAL information consistent with the terms of this Order.

(# 222 at 2–3)

The proposed protective order would require law enforcement officers receiving this information to sign a certification agreeing to comply with the protective order and to submit to the jurisdiction of this Court. (# 222 at 2) The defendants oppose the modification of the protective order.

### III. Discussion

The Commonwealth argues that modifying the protective order would serve the salutary purpose of conserving the resources of these other state and federal agencies who seek to gain access to information that may be helpful in enforcing the Medicaid laws. It maintains that Medicaid's statutory scheme and regulations envision a cooperative arrangement between the federal and state governments that contemplates the sharing of information for enforcement purposes. While the Commonwealth does not suggest that the defendants lacked "good cause" in restricting access to sensitive business material (see # 222 at 9), it maintains that no similar justification precludes extending the scope of the modification proposed here, id. The Commonwealth argues that the underlying purpose of the existing protective order—to protect sensitive information from falling into the hands of the defendants' competitors—is not implicated by the proposed modification.[3]

The defendants argue that the sort of wide distribution of discovery materials contemplated by the proposed modification of the protective order would effectively vitiate any protection that the protective order offers. Both parties point to state cases supporting their respective positions. (See # 222 Exh. 1 and # 227 at 4 n. 1) The Commonwealth also observes that Judge Saris recently approved a modification to a protective order in the ongoing multi-district litigation case before her, see generally In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61 (D.Mass.2005) (hereafter the "AWPMDL"), which permits the United States, a party in the AWP–MDL, to share protected discovery information with law enforcement personnel, including, inter alia, State Attorneys General "in states that have active investigations of issues similar to those in this action." AWP–MDL, No. 01–cv–12257, # 3752 ¶ 4(I).

First, the Court notes that the Commonwealth conceded at oral argument that it does not need to share the information to advance its own case. Rather, the Commonwealth seeks to modify the protective order on behalf of the interests of the absent government entities. Its most compelling argument is that sharing discovery information will avoid duplicative discovery. The Court is not unsympathetic to this goal, but, in the Court's view, the Commonwealth's proposal (and arguments) suffer from a fatal abstraction. At oral argument, the Commonwealth surmised that it would probably provide discovery in this case to the attorneys general in all fifty states, and to the federal government. Further, the Commonwealth suggests

---

3. The Commonwealth also argues that the modification is warranted because the defendants have no protected interest in avoiding prosecution. (See # 222 at 10) At oral argument, the

Commonwealth conceded, however, that there is no basis in the allegations to suggest that the defendants' actions here could be criminal.

that the purposes for which the law enforcement personnel seek the protected information is for investigatory purposes in preparation for potential litigation, not for pending litigation. That is, the Commonwealth posits that "[t]he same evidence will *likely support similar claims* for other Medicaid programs and support prosecution of those claims by both federal and state authorities." (# 222 at 11) (emphasis added) Given this position, the Court must ask whether the Commonwealth intends to disseminate information in which the various states have no legitimate interest, and pertaining to defendants against whom the states have no possible claims? The Commonwealth has, for example, pointed to no other pending collateral litigation; indeed, it has not established that any other governmental entity has an ongoing investigation that implicates the discovery in this case.[4] Rather, the Commonwealth appears to maintain that providing discovery to the fifty states and the federal government will assist those entities in identifying latent claims.

Although the First Circuit has noted the "surface appeal" of the argument advanced by the Commonwealth here, *viz.*, that disclosure of discovery material "is warranted to avoid wasteful duplication of discovery in other cases," *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir.1993), it has also noted that this consideration "looks at only one element in the equation, *id.*" Rather, "[a]bsent an immediate threat to public health or safety, the first concern of the court is with the resolution of the case at hand." *Id.* So, too, the Court acknowledges the appeal of the Commonwealth's argument, but the focus, in the Court's view, must remain on the parties in the current suit. There is a vast difference between the limited disclosure to public health and environmental agencies in the face of a specific and immediate public health threat (as was the case in the protective order in *Anderson v. Cryovac, Inc.*, 805

F.2d 1, 8 (1st Cir.1986)) *cited in Poliquin,* 989 F.2d at 535, and the amorphous and wide-ranging disclosure contemplated in the proposed modification here, the purpose of which would be to identify possible claims against possible defendants. The defendants' well-taken fear here is that such broad disclosure would eviscerate the effectiveness of the protective order. And from the Court's vantage point, expansive sharing of confidential information would do nothing to advance the present litigation; indeed, the obverse seems likely. *Cf. SmithKline Beecham Corp. v. Synthon Pharmaceuticals, Ltd.*, 210 F.R.D. 163, 168 (M.D.N.C.2002) (noting that "modifying protective orders for other litigation involves re-litigation over issues that have nothing to do with the lawsuit in front of the court ... burden[ing] both the court and the parties").

Toward that end, the Court is unpersuaded that modifying the protective order is the appropriate means by which the third-party government entities should be permitted to acquire the protected information in this case. Rather, the Court concludes that the correct course for third parties to seek access to the protected material in this case is through Rule 24 intervention. *See Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783 (1st Cir.1988) (noting that "where intervention is available (*i.e.* civil cases), it is an effective mechanism for third-party claims of access to information generated through judicial proceedings"), *cert. denied*, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *United States ex rel. Franklin v. Parke–Davis*, 210 F.R.D. 257, 258 (D.Mass.2002) ("The proper procedural method for asserting access to discovery materials subject to a protective order is a motion to intervene pursuant to Fed.R.Civ.P. 24."); *see also* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal*

---

4. The State of California in its amicus brief notes that the Judicial Panel on Multidistrict Litigation has transferred its case to the district court. (*See* # 238 at 2) Even assuming for present purposes that the State of California could establish a legitimate need for the discovery obtained in this case, the State of California relies on a leading case which approves allowing government entities to intervene for the limited purpose of gain-

ing access to discovery. *See Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980) (permitting intervenor State of New York, a bona fide litigant, to seek modification of protective order in order to gain use of discovery materials). As the Court explains below, intervention for this purpose is also the course followed in the First Circuit and, in the Court's view, is the appropriate procedural course here.

*Practice and Procedure* § 2044.1 at 576 (2d ed. 1994) ("Procedurally, the common manner by which these nonlitigants seek modification is to move for intervention under Rule 24(b)."). Indeed, the First Circuit has cautioned against seeking to avoid this procedural rule. *See Public Citizen*, 858 F.2d at 784.

As a practical matter, then, assessing the propriety of modifying the protective order makes more sense in the context of a motion to intervene, at which point the absent parties can make their specific case for access. *Cf. Manual for Complex Litigation* (4th ed), § 11.432 at 67 (when assessing requests from third parties for access to protected information, "courts balance the potential harm to the party seeking protection against the requesting party's need for the information and the public interest served by its release"); *Foltz v. State Farm Mut., Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir.2003) (favoring allowing access of collateral litigant-intervenor to protected information to avoid duplication of discovery, but requiring collateral litigant to "demonstrate the relevance of the protected discovery to the collateral proceedings"). Were these entities themselves to come before the court to request the information, these third parties would themselves undoubtedly have to demonstrate some legitimate basis for modifying the protective order here. *Cf. Wilk v. Am. Medical Assoc.*, 635 F.2d 1295, 1296 (7th Cir.1980) (holding that State of New York, as intervenor in action and "bona fide litigant" had right to discovery materials that were relevant to New York's suit); *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 106 F.R.D. 551, 555–556 (S.D.N.Y.1985) ("the absence of a pending suit against the target party at the time of the modification request" weighs against granting government access because it is "less likely that modification of the protective order will avoid costly and repetitive discovery").

Further, the Commonwealth appears to concede that state and federal law enforcement personnel would be able to obtain the needed information by means other than modifying the protective order. (# 222 at 11) (indicating that states would simply have to "re-subpoena the already-conducted discov-ery" to gain the information plaintiff seeks through this motion). *Cf. also SmithKline Beecham Corp.*, 210 F.R.D. at 166 ("Even when a legitimate reason for the modification [of a protective order] is proposed, such as a need to use the information in other litigation, the movant still should show the inability to reasonably obtain the information by alternative means."). As *Public Citizen* notes, governmental entities have at their disposal special investigatory abilities that private litigants do not have. *Public Citizen*, 858 F.2d at 791.

The Commonwealth and amici make two additional arguments that warrant brief discussion. First, they point to a protective order entered in the ongoing AWL–MDL presently before the district court. In that case, the United States, as a party, requested to be able to disseminate discovery obtained from Abbott Laboratories, Inc. to the State Attorneys General. Judge Saris has signed the Protective Order in that case. However, the protective order at issue there concerned a single defendant, Abbott Laboratories, Inc., one of many in the consolidated cases. Further, in the hearing on the matter before Magistrate Judge Bowler on January 30, 2007, the plaintiffs pointed to particular obstacles they had in sharing information with other states, such as Texas, who had pending litigation against Abbott Laboratories, Inc. (*See* AWL–MDL No. 01–cv12257, # 3790, Tr. of Hearing at 9–11) Here, the Commonwealth simply proposes disseminating the information broadly to "[l]aw enforcement officers of the states or the United States having responsibility for enforcement of the laws relating to Medicaid, Medicare and other federal and state statutes" in the hope that a latent claim may exist similar to the claims alleged here.

In any event, reliance on Judge Saris' rulings in the AWL–MDL seems wholly misplaced. After all, the point of multi-district litigation, *inter alia*, is to avoid duplicative discovery and centralize proceedings in one district court. The MDL process, by its nature, obviates most of the lurking questions that attend the Commonwealth's proposed revision. But this is not an MDL case. In the context of this litigation, the concerns

identified by the Court[5] and the defendants—*e.g.*, lack of notice, the court's ability to monitor compliance with the protective order—are avoided by the simple expedient of requiring the absent parties to intervene and present their case.

Second, the Commonwealth and amici suggest that Medicaid's statutory scheme (42 U.S.C. §§ 1396a and 1396b; 42 C.F.R. § 1007.11(e) (2006)), obligates the Commonwealth in some fashion to share discovery information. (*See* # 222 at 4–5) The Court does not read these provisions as expansively as the Commonwealth suggests: the provisions oblige the states to monitor compliance within their own states, but they do not suggest that one state ought to become a clearinghouse for latent claims in other states. In any event, at this juncture, the Commonwealth's need to provide or share information remains hypothetical.

In sum, because the procedurally appropriate way for a third party to gain access to protected discovery materials is through a Fed.R.Civ.P. 24 motion to intervene, *Public Citizen*, 858 F.2d at 783, and the third-party law enforcement personnel would be able reasonably to obtain the information through alternative means, *see SmithKline Beecham Corporation*, 210 F.R.D. at 166, the Court will deny the plaintiff's motion to modify the protective order.

### IV. Conclusion and Order

For the reasons stated, it is ORDERED that the Plaintiff The Commonwealth of Massachusetts's Motion to Modify Protective Order to Permit Sharing of Discovery Materials with Other State and Federal Law Enforcement Personnel (# 223) be, and the same hereby is, DENIED.

5. In this regard, the Court finds particularly persuasive the reasoning of the New York and Wisconsin state court cases appended to the defendants' memorandum (# 227) as exhibits A and B.

In the New York case, *People of the State of New York v. Pharmacia Corp., Glaxosmithkline, PLC, and Aventis Pharmaceuticals, Inc.*, Index nos. 904–03, 905–03 & 1150–03, at 6 (Sup.Ct., Albany Co., 1/18/2005), the State had sued the drug companies alleging that they had misrepresented the amount of the average wholesaler price of some of its prescription drugs resulting in overpayments by the State. The State sought to be permitted to disclose "confidential" materials to the attorneys general of other states for law enforcement purposes. The judge denied the request as it had the "potential of abuse."

In the Wisconsin case, *State of Wisconsin v. Amgen, et al.*, Case No. 04cv1709, at 2–3 (Cir. Ct., Branch Seven, Dane Co., 11/29/2005), the State sued 37 pharmaceutical companies, and the State sought to share discovery materials with law enforcement officials of other states who have similar lawsuits or investigations pending. The Court denied the request, stating that "the universe into which these materials would flow is far from defined."